ROWE INTERNATIONAL, INC., Appellee,

v.

J–B ENTERPRISES, INC., Appellant.

No. 80–1312.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1981.

Decided May 6, 1981.

Edward E. Murphy, Jr., Clayton, Mo., for appellee.

Sleater & Sleater, W. W. Sleater (argued), M. C. Sleater, Clayton, Mo., for appellant.

Before BRIGHT and ROSS, Circuit Judges, and HARRIS,* Senior District Judge.

OREN HARRIS, Senior District Judge.

Rowe International, Inc., (Rowe) brought this diversity suit against J–B Enterprises, Inc., (J–B) to recover the balance due on the purchase price of vending machines sold to J–B. The sales of the vending machines were based on eight separate installment contracts, each of which contained an acceleration clause in the event of default. J–B counterclaimed, alleging breach of implied warranties and misrepresentation in addition to incidental and consequential damages.

The facts in the case are that Rowe sold two models of can soda vending machines, the 400 and the 460, which were manufactured for it by Victor Products. Changing technology in the can soda manufacturing business had begun to cause problems with the vending mechanism on these machines. These problems were discovered as early as 1973. So long as the soda was packaged in cans with thicker steel walls there did not seem to be any difficulty, but when the manufacturers started putting soda in the thin walled cans that were not as firm, jamming problems with the ejecting mechanism developed. After Victor failed to develop a vending mechanism to handle the soft walled cans, Rowe developed such a mechanism on its own. The new mechanism was made available to its distributors for installation in machines which were out of its standard one year warranty and offered to substitute the mechanism in machines which were still under warranty.

Rowe determined to cease the distribution of the Victor machines and secure its machines from another source. Rowe had an inventory of 1,000 Victor machines. The old style machines were promoted during the latter part of 1975 and in 1976 by offering one free machine for every two purchased.

J–B originally purchased a total of 21 Model 460 machines from Rowe in 1974. They operated in a satisfactory manner and were adequately serviced by Rowe. In 1975, J–B bought a Model 400 machine from Rowe. It was placed in a low to moderate volume location, and although there were some jamming problems, it was serviced by Rowe.

In 1976, J–B decided to purchase a total of 75 machines under Rowe's promotion program. These machines were to be deliv-

* The Honorable Oren Harris, United States Senior District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

ered in groups over a period of a year so that they could be placed out in new locations. These machines were identical to the machines that J–B had purchased earlier. The warranty furnished by Rowe for all the machines was one year. None of these machines had the new ejectors.

In October of 1977, J–B terminated its vending business because its employees voted to join the Teamsters Union. The business was purchased by two other vending machine operators, Kay C and D.E.B. The installment sales agreements between Rowe and J–B required Rowe's consent in the event of a sale of the mortgaged equipment. J–B indicated that all debts were going to be paid and Rowe consented to the sale of the vending machines. The contracts of sale to Kay C and D.E.B. required J–B to pay off existing balances on the equipment and also specifically disclaimed any implied warranties of merchantability or fitness for a particular purpose.

Subsequent to the sale of its business, and continuing through June of 1978, when the lawsuit was filed, J–B made payments on its account to Rowe. J–B made 10 payments totaling $5,938.58, but these payments did not bring the account current. J–B sold all but 16 of the Rowe machines as a part of the sale of the business, 10 of these remaining machines were sold elsewhere and 6 remained in J–B's possession at the time of the trial.

At the trial, the jury was given four verdict forms (two on the complaint, and two on the counterclaim). The jury returned all four verdict forms finding for both parties on each part. The trial judge[1] sent the jury back and they returned a verdict for Rowe on its cause of action in the amount of $17,704, and for Rowe on J–B's counterclaim. J–B appeals from this jury verdict.

J–B initially argues that the trial court erred in failing to grant J–B's motion for a directed verdict at the close of all the evidence. J–B contends the evidence was un-

disputed that the machines did not have the revised ejector mechanism, Rowe knew at the time of the sale the machines would jam without them, and J–B continually notified Rowe of the problems with the machines and was constantly reassured the problems would be cured. Thus, J–B asserts that in June of 1978 it was entitled to revoke acceptance of the machines under 400.2–608, R.S.Mo.1969. This section provides:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
>
> (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
>
> (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
>
> (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

■ Whether the purchaser's revocation of acceptance of a commercial unit occurs within a reasonable time is ordinarily a question of fact for the jury. *Applebaum v. Falco Leasing Company,* 447 S.W.2d 799 (Mo.App.1969); *Dopieralla v. Ark. La. Gas Co.,* 255 Ark. 150, 499 S.W.2d 610 (1973).

■ In addition, the sufficiency of notice and what is reasonable time within which to give notice of breach of warranty are ordinarily questions of fact for the jury. *Green Seed Co. of Ark. v. Williams,* 246 Ark. 463, 438 S.W.2d 717 (1969); *Pritchard*

---

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

*v. Liggett & Myers Tobacco Company*, 295 F.2d 292 (3rd Cir. 1961).

The Court, therefore, concludes that the trial court properly denied defendant's motion for a directed verdict on its counterclaim.

J–B next argues that the trial court erred in failing to instruct the jury on its claim for fraudulent misrepresentation and its claim for punitive damages which are the result of fraud, as set out in Defendant's instructions 11 and 12.

J–B's requested instruction 11 provides:

Your verdict must be for J–B Enterprises, Inc., if you believe that Rowe International, through its employees, told J–B Enterprises that Rowe's service department would service and maintain the vending machines, and that Rowe had engineers who would work upon and solve any problems that might arise concerning the vending machines, and that when said statements were made, Rowe knew they were false or was consciously ignorant of whether they were true or not, and J–B Enterprises did not know that these statements were false and relied upon these statements in entering into the sales contracts with Rowe.

The Missouri courts have held that the essential elements of fraud are:

(1) a representation was made of a material fact which was false and known to be false, or was recklessly made, (2) the statement was made with the intent to deceive for the purpose of inducing the hearer to act upon it, (3) the hearer reasonably relied upon it (4) to his injury and damage. *Bauer v. Adams*, 550 S.W.2d 850 (Mo.App.1977).

A failure to prove any one of these elements is fatal to the claimant's right to recover. *Bauer v. Adams*, supra.

J–B's theory of recovery is based upon the rule followed in *Brennaman v. Andes & Roberts Brothers Construction Co.*, 506 S.W.2d 462, 465 (Mo.App.) which states that the burden of proof in fraud for misrepresentation of intention to perform an agreement requires the claimant to demonstrate that the promissor did not intend to perform at the time the agreement was made. Such a misrepresentation of intention is to be distinguished from a mere promise or expression of opinion, both of which are not actionable. *Bauer v. Adams*, supra; *Brennaman v. Andes & Roberts Brothers Construction Co.*, supra.

The issue thus narrows to the single question of whether the evidence in this case demonstrated a present intent not to perform the required service upon the machines at the time the agreement was made.

An intention to deceive can be proved by direct evidence or by circumstantial evidence from which intent could be inferred. *Bauer v. Adams*, supra; *Klecker v. Sutton*, 523 S.W.2d 558 (Mo.App.1975). However, failure of performance is insufficient to establish this intent or to shift the burden of proof. *Bauer v. Adams*, supra. More importantly, a party may not make a submissible case by relying upon an inference which is contrary to that party's only direct evidence on the matter to be proved. *Bauer v. Adams*, supra.

Michael Strebler testified that when Bob Thomason was the manager of Rowe in St. Louis he promised Strebler he would take care of all problems which arose. While Thomason was manager J–B received pretty good service. However, Thomason died in 1975, and Marvin Menefee became manager. When the 75 machines were purchased in 1976, Menefee told Strebler that the sales promotion was due to a model change and Rowe would give J–B an unconditional guarantee on the machines for one year. Repairs were subsequently made to the machines, although in some instances the repairs were delayed due to Rowe having only one man to answer service calls.

The record is void of evidence that Rowe did not intend to perform at the time the agreements were made to purchase the can soda vending machines. Therefore, the Court concludes that the trial court was correct in denying J–B's requested instruction 11 and the punitive damage instruction 12.

The defendant's third allegation is that the trial court erred in reading plaintiff's instructions 2 and 3 and defendant's instructions 9 and 10, as amended, to the jury. However, J–B failed to specifically object to instructions 2 and 9, made no objection to 3 and consented to the modifications of 9 and 10.

Rule 51, F.R.Civ.P., provides in relevant part:

> No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for the objection.

■■■■ Error in the instructions not properly objected to is waived unless the error is plain error in the sense that a miscarriage of justice would otherwise result. *Mid-America Food Service v. ARA Services, Inc.*, 578 F.2d 691 (8th Cir. 1978). The plain error exception to compliance with Rule 51 is narrow and confined to the exceptional case where error has seriously affected the fairness, integrity or public reputation of judicial proceedings. *Wright v. Farmers Co-op of Arkansas and Oklahoma*, 620 F.2d 694 (8th Cir. 1980).

■■■■ The Court, under the circumstances, does not think it is necessary to discuss the merits of defendant's arguments in these instructions other than to state that the alteration of instructions 9 and 10 are slight and not erroneous; instructions 2 and 3, while not precisely correct, did not prejudice the defendant. The Court, therefore, concludes that where J–B failed to make proper objections at the trial of this case, the error, if any, in these instructions has not seriously affected the fairness, integrity or public reputation of judicial proceedings, and affirms the trial court on this point.

The trial court erred in sending the jury back for further deliberation after it returned inconsistent verdicts is J–B's fourth argument. When the jury returned its verdict, the court called the attorneys for the parties to the bench and explained the situation to them. The court then suggested that he again explain to the jury the verdict forms and send them back for further deliberation. Both attorneys agreed to this procedure.

■■■■ The trial court has the power, before accepting a verdict and discharging the jury, to permit the jury to correct a mistake in the verdict. *United States v. Howard*, 507 F.2d 559 (8th Cir. 1974); *Firemen's Ins. Co. v. Craigie*, 298 F.2d 457 (8th Cir. 1962). In addition, J–B consented to this procedure. The old and well-settled law that issues not raised in the trial court cannot be considered by this Court as a basis for reversal is followed except in unusual cases where the obvious result would be a plain miscarriage of justice. *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713 (8th Cir. 1976). Under these circumstances, the trial court did not act improperly and a new trial should not be granted on this ground.

■■■■ The fifth allegation of error is that the trial court failed to show the verdict forms to the attorneys. No request was made of the trial court to see these verdict forms. Counsel cannot now assert error for a failure to grant a request never made. This argument is totally without merit.

J–B's sixth contention is that the trial court erred in sustaining objections to part of the testimony of Donald Block. During the course of Block's testimony, counsel for the parties approached the bench and, outside the hearing of the jury, J–B's attorney stated to the trial court that if Block was permitted to testify he would testify that his company brought suit against Rowe over the operation of vending machines, and when the suit came to trial, Murphy, the attorney for Rowe, who was also counsel for Rowe in this case, made a judicial admission in open court that the machines would not work. Counsel for Rowe disagreed and stated that his recollection was that they were not going to contest the issue of the machines meeting the warranty and would concentrate on the issue of damages. Rowe contends that this statement was a statement to guide the trial judge. The trial court determined that testimony of this prior litigation should not be admit-

ted. In addition, J–B's attorney did not object to the trial court's ruling, as provided in Rule 46, F.R.Civ.P.

 Evidence of other transactions or occurrences is admissible if relevant and not too likely to confuse a jury or prejudice the opposing party. *Spartan Grain & Mill Co. v. Ayers,* 517 F.2d 214 (5th Cir. 1975). Also, the facts surrounding this statement are not clear as to whether it was made on the record during the course of trial, or whether it had sufficient formality or conclusiveness to be considered a judicial admission. *Taylor v. Allis-Chalmers Manufacturing Co.,* 320 F.Supp. 1381 (E.D.Pa.1969), aff'd mem. 436 F.2d 416 (3rd Cir. 1970). Under the circumstances surrounding the alleged admission, this Court must conclude that the trial court acted properly in refusing to allow this testimony.

J–B also argues that the trial court erred in sustaining objections to the testimony of Michael Strebler concerning which vending machine locations or stops were lost, the cost of service calls on the machines and the value of locations that were lost. During the course of Strebler's testimony, defendant attempted to introduce two boxes of index cards which listed all the stops of J–B, both active accounts and those that it had lost. The trial court determined that this evidence was inadmissible because the records did not show when a machine was removed, the reason for removal, and these records were not listed on the pretrial material. J–B never introduced any evidence as to the value of the locations that were lost. This Court must conclude that it was within the trial court's discretion not to admit this testimony.

Rowe at one point objected to Strebler testifying as to the value of his service calls on the basis that it would be the excessive service due to defects that would be compensable since all vending machines required some service. This evidence was later admitted when J–B showed it sustained additional damage over and above its regular payroll cost by reason of the defects. Although Strebler was not allowed to testify as to the average value of all of his service calls, the evidence was later admitted and thus J–B was not prejudiced.

J–B finally alleges that there was evidence of jury misconduct warranting a new trial. This contention is completely without merit. These allegations should have been reported to the court immediately and J–B should have requested a mistrial at that time. J–B has waived its objections by waiting until after the case was completed to raise these issues. Rule 46, F.R.Civ.P.

The judgment is affirmed.