F I L E D
United States Court of Appeals
Tenth Circuit

FEB 24 1999

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

LINDA L. POINDEXTER,

> Plaintiff - Appellee,

v.

No. 97-3273

ATCHISON, TOPEKA AND SANTA
FE RAILWAY COMPANY,

> Defendant - Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D. Ct. No. 94-CV-2341)

Margaret S. Garvey, Freeborn & Peters, Denver, Colorado, appearing for
Appellant.

Mark C. Beam-Ward, Hill, Beam-Ward & Kruse, Overland Park, Kansas,
appearing for Appellee.

Before **TACHA**, **McWILLIAMS**, and **LUCERO**, Circuit Judges.

**TACHA**, Circuit Judge.

This action stems from plaintiff's claim that her employer, The Atchison,

Topeka and Santa Fe Railway Company ("Santa Fe"), violated the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., when it refused to transfer her to Kansas City after she developed a panic disorder that prevented her from traveling the highways between her home in Kansas City and her workplace in Topeka. The case proceeded to trial, and the jury returned a verdict in favor of Ms. Poindexter. After denying Santa Fe's motion for judgment as a matter of law, or, in the alternative, a new trial, the trial court entered a final judgment in accordance with the jury verdict. Defendant appeals, and we take jurisdiction under 28 U.S.C. § 1291. We reverse and remand for a new trial.

## Background

Ms. Poindexter began her employment with Santa Fe on June 3, 1974, in its Kansas City, Kansas office, where she worked until June 1993. Pursuant to a system-wide reorganization in which Santa Fe consolidated its customer quality and support functions, Ms. Poindexter accepted a transfer to Topeka. Ms. Poindexter had the option of actually moving from Kansas City to Topeka or simply accepting relocation funds. She chose to accept the relocation compensation and commute, typically car pooling with other Santa Fe employees.

In October 1993, plaintiff experienced a panic attack while returning from a vacation in Arkansas with her sister. A second panic attack occurred while driving the carpool group to Topeka in early November 1993. At her request, the others in the group took over all driving responsibilities. Shortly thereafter, Ms.

- 2 -

Poindexter went on medical leave of absence and remained in that status throughout the trial.

After taking the medical leave of absence, Ms. Poindexter sought a transfer to Santa Fe's Kansas City office because of her condition. Santa Fe denied her transfer request. Ms. Poindexter asserts that this violates the ADA as a discriminatory refusal to reasonably accommodate her disability.

**Discussion**

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). A qualified individual with a disability is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). Therefore, to establish a viable claim under the ADA, a plaintiff must prove by a preponderance of the evidence that (1) she has a disability; (2) she is qualified for the position; and (3) her employer discriminated against her because of her disability. See Sutton v. United Air Lines, Inc., 130 F.3d 893, 897 (10th Cir. 1997), cert. granted, 67 U.S.L.W. 3433 (U.S. Jan. 8, 1999) (No. 97-1943); Siemon v. AT&T Corp., 117 F.3d 1173, 1175 (10th Cir. 1997). Because we reverse based upon the "disability" prong, we do not address the two latter elements.

"Disability" under the ADA is a term of art. The statute defines it as:

**(A)** a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

**(B)** a record of such an impairment; or

**(C)** being regarded as having such an impairment.

42 U.S.C. § 12102(2). The Supreme Court in <u>Bragdon v. Abbott</u>, __ U.S. __, 118 S. Ct. 2196, 2202 (1998), recently announced, "consideration of subsection (A) of the definition proceeds in three steps." First, the court must determine whether the plaintiff has an impairment. <u>See id.</u> Second, the court must identify the life activity upon which the plaintiff relies and determine whether it constitutes a major life activity under the ADA. <u>See id.</u> Third, "tying the two statutory phrases together, [the court] ask[s] whether the impairment substantially limited the major life activity." <u>Id.</u> Thus, the Court in <u>Bragdon</u> makes clear that whether a claimed affliction constitutes an impairment under the ADA and whether the identified endeavor constitutes a major life activity are determinations of law for the court to decide. It follows that a plaintiff must specifically plead or prove at trial the impairments and the major life activities he or she asserts are at issue. <u>See id.</u> at 2205 ("[I]t may seem legalistic to circumscribe our discussion to the activity of reproduction. We have little doubt that had different parties brought the suit they would have maintained that an HIV infection imposes substantial limitations on other major life activities.").

In construing the ADA provisions, the Supreme Court has looked beyond the statutory language to the regulations interpreting both the ADA and the Rehabilitation Act of 1973. See Bragdon, __ U.S. at __, 118 S. Ct. at 2202-05; see also 42 U.S.C. § 12201 (noting that courts should not construe the ADA to apply lesser standards than those in the Rehabilitation Act and its regulations). These regulations prove particularly helpful in defining what constitutes an impairment or major life activity under the ADA.

When the Department of Health and Human Services issued regulations defining impairment under the ADA, it adopted the Rehabilitation Act regulations without change. See 29 C.F.R. pt. 1630, app. at 347. A physical or mental impairment is:

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
>
> (2) Any mental or physical disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h) (1998). Although this definition is not meant as a comprehensive enumeration, the commentary accompanying the Rehabilitation Act regulations "contains a representative list of disorders and conditions constituting physical impairments, including 'such diseases and conditions as

- 5 -

orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, and . . . drug addiction and alcoholism.'" Bragdon, __ U.S. at __, 118 S. Ct. at 2202 (quoting 42 Fed. Reg. 22685 (1977), reprinted in 45 C.F.R. pt. 84, app. A at 334 (1997)).

The ADA and Rehabilitation Act regulations also assist courts in determining whether a particular endeavor may properly be considered a major life activity. "Rather than enunciating a general principle for determining what is and is not a major life activity, [these] regulations instead provide a representative list, defining [the] term to include 'functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" Bragdon, __ U.S. at __, 118 S. Ct. at 2205 (quoting 45 C.F.R. § 84.3(j)(2)(ii) (1997); 28 C.F.R. § 41.31(b)(2) (1997)); see also 29 C.F.R. § 1630.2(i) (1998). As the Department of Health and Human Services asserts, "This list is not exhaustive. For example, other major life activities include, but are not limited to, sitting, standing, lifting, and reaching." 29 C.F.R. pt. 1630, app. at 347 (1998). Finally, if the asserted major life activity is not one of the examples listed above, under the plain meaning of the word "major," the "'touchstone for determining an activity's inclusion under the statutory rubric is its significance.'" See Bragdon, __ U.S. at __, 118 S. Ct. at

2205 (quoting Abbot v. Bragdon, 107 F.3d 934, 940 (1st Cir. 1997)). For

example, this court in Pack v. Kmart Corp., ___ F.3d ____, No. 97-7120, 1999

WL 51882, at *3 (10th Cir. Feb 4, 1999) recently recognized that sleeping,

although not enumerated in the regulations, constitutes a major life activity, while

concentration does not. The court asserted, "In deciding whether a particular

activity is a 'major life activity,' we ask whether the activity is significant within

the meaning of the ADA." Pack v. Kmart Corp., 1999 WL 51882, at *3. We then

held

> that sleeping is a major life activity, but concentration is not.
> Sleeping is a basic activity that the average person in the general
> population can perform with little or no difficulty . . . . However,
> concentration is not itself a major life activity. Concentration may be
> a significant and necessary component of a major life activity, such
> as working, learning, or speaking, but it is not an 'activity' itself."

See Pack, 1999 WL 51882, at *3-4.

In this case, the court neither found nor precisely articulated an impairment

and major life activity that the impairment may have affected. Instead, the

district court erred in submitting these legal questions to the jury. Thus, we

cannot discern upon which possible major life activity the jury rendered its

verdict. The jury had no guidance as to which endeavors it could properly

consider as major life activities in reaching its decision.[1] The court's lack of

---

[1] The dissent argues that we "overlook[] the district court's denial of the employer's motions for summary judgment and judgment as a matter of law that, at a

articulation likely resulted from the fact that neither the court nor the parties had the guidance provided by the Supreme Court in Bragdon. Plaintiff may have also failed to properly plead or prove with particularity the major life activity her asserted panic disorder affected, thereby contributing to the district court's error. The Supreme Court in Bragdon made clear that the court, in making determinations of law and formulating jury instructions, is to analyze only the major life activity asserted by the plaintiff. See Bragdon, __ U.S. at __, 118 S. Ct. at 2205 (explicitly limiting its analysis to the major life activity of reproduction and declining to speculate about other possible major life activities that the HIV infection might have impaired). Thus, we emphasize that in order to state a claim under the ADA, a plaintiff must articulate with precision the impairment alleged and the major life activity affected by that impairment.

This holding does not in any way change the federal notice pleading requirements. A plaintiff has the option of clarifying his or her position at the pleading stage or waiting until trial to prove with particularity the impairment and

_____

minimum, implicitly decided these issues of law." We do not. First, the district court did not clearly decide what, if anything, constituted a major life activity in this case. It merely stated that sufficient evidence existed to submit the issue to the jury. Second, even if the district court had determined as a matter of law the major life activity at issue in this case, it did not pass that information along to the jury. The jury must receive guidance regarding which major life activities it could consider in its deliberations. Without appropriate jury instructions, we have no way of knowing whether the jury verdict rested on a proper major life activity.

major life activity he or she asserts are at issue. In this case, Ms. Poindexter did not specifically plead the major life activities she believes were impaired. However, on the record before us, we cannot ascertain whether Ms. Poindexter sufficiently presented the legal issues during trial to the district court for the required analysis. We disagree with the dissent's conclusion that Ms. Poindexter articulated commuting as her major life activity. At best, the record is ambiguous. Therefore, we cannot, on review, determine whether she met this burden.

Even assuming that she met her burden of proving with particularity her asserted major life activities, the district court erred in submitting the legal issues of impairment and major life activity to the jury. While defendants apparently did not object to the jury instructions at trial, we may review civil instructions for plain error in limited instances involving a miscarriage of justice or instructions "'patently plainly erroneous and prejudicial.'" See Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1516 (10th Cir. 1984), aff'd, 472 U.S. 585, 105 S. Ct. 2847 (1985) (quoting Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 925 (10th Cir. 1984)); see also Phillips v. Duro-Last Roofing, Inc., 973 F.2d 869, 871 (10th Cir. 1992); Ryder v. City of Topeka, 814 F.2d 1412, 1427-28 (10th Cir. 1987). We find this case presents such a rare instance. The instruction was erroneous, and the fact that the plaintiff prevailed

despite her possible failure to identify any specific major life activity prejudiced

the defendant.  In a situation, such as this, in which the judge delegates to the jury

a decision that he or she should make, we find plain error.  Therefore, we

REVERSE the judgment of the district court and REMAND for a new trial.

97-3273, *Poindexter v. Atchison, Topeka and Santa Fe Railway Company*

**LUCERO**, Circuit Judge, dissenting.

In reversing the jury verdict in this case, the majority concludes that, for purposes of the Americans with Disabilities Act ("ADA"), neither the district court nor the employee, Poindexter, articulated the mental impairment and major life activity at issue with sufficient particularity. The majority also concludes that the district court committed reversible error by submitting to the jury the legal question of whether the employee suffered a mental impairment affecting a major life activity. I respectfully disagree with both conclusions.

## I

The majority claims that both the employee and the district court failed to articulate a mental impairment. This is in direct conflict with the employer's, Santa Fe Railway, concession that the employee's anxiety attacks constitute a mental impairment within the meaning of the ADA. Moreover, the record provides no support for the majority's conclusion that, to the prejudice of the employer, the employee failed to state the major life activity at issue in this case. To the contrary, in denying the employer's motion for judgment as a matter of law, the district court stated: "Santa Fe insists on characterizing the major life activity at issue as working. Poindexter never claimed that her disability prevented her from performing at work. She merely maintained she had problems getting to and from work." Appellant's App. at 67 (emphasis added). It is

apparent from the record that Poindexter claimed that the life activity affected was "getting to and from work"—in other words, commuting.

Not only is the majority opinion at odds with the record before us, it is in tension with traditional rules of pleading. The rules merely require that a complaint "concisely states facts upon which relief can be granted upon any legally sustainable basis. Only a generalized statement of the facts from which the defendant may form a responsive pleading is necessary." New Home Appliance Ctr., Inc. v. Thompson, 250 F.2d 881, 883 (10th Cir. 1957); see also Fed. R. Civ. P. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").[1] The employee's complaint surely satisfies these requirements. If the employer found the complaint prejudicially "vague or ambiguous," it could have called for a more definite statement of the facts "before

---

[1] In stating that a plaintiff has a duty to "specifically plead major life activities she believes [to be] impaired," the majority cites Bragdon v. Abbott, 118 S. Ct. 2196 (1998). In Bragdon, the Court said "it may seem legalistic to circumscribe our discussion to the activity of reproduction. We have little doubt that had different parties brought the suit they would have maintained an HIV infection imposes substantial limitations on other major life activities." Id. at 2205. There is nothing here to support the suggestion that Bragdon requires a greater degree of specificity in ADA pleadings than required by the Federal Rules of Civil Procedure. A full reading of Bragdon shows that the Court limited its discussion of major life activities to reproduction because "[r]espondent's claim throughout this case has been that the HIV infection placed a substantial limitation on her ability to reproduce and to bear children," id. at 2204, and the issue on certiorari was specifically limited to reproduction. In the case before us, the record shows the employee consistently claimed that her mental impairment severely affected her ability to commute to and from work.

-2-

interposing a responsive pleading." Fed. R. Civ. P. 12(e); see Thompson, 250

F.2d at 883. The employer's failure to do so belies a claim of prejudicial lack of

specificity in the employee's pleading. Despite the majority's assertion to the

contrary, its approach ignores the federal notice pleading requirements and

effectively drives civil procedure in ADA cases back to pre-code rules of

pleading.

## II

The majority decides that in submitting the mental impairment and major

life activity issues to the jury, the trial judge committed clear, prejudicial error.

This overlooks the district court's denial of the employer's motions for summary

judgement and judgment as a matter of law that, at a minimum, implicitly decided

these issues of law.[2] The trial court may have been redundant, even technically

wrong, in submitting the issues of mental impairment and major life activity to

the jury, but absent objections from the employer, doing so was not "patently

_____

[2] In denying the employer's motion for judgment as a matter of law, the trial court stated: "Santa Fe next argues that, as a matter of law, commuting to work is not a major life activity. The court disagrees, reaffirming its previous ruling that the evidence was sufficient to submit the issue to the jury." Appellant's App. at 66-67 (footnote omitted). Although not the most articulate statement of the issue, this shows the court was presented with the legal question of whether "commuting to work" was a major life activity, and resolved the matter against the employer. True, the judge also stated that "[f]rom the evidence presented, the jury could have found that Poindexter's panic attacks and depression affected more aspects of her life than commuting." Id. Considering the above statements by the court and the absence of contemporaneous objections by the employer to the jury instructions, I do not consider plain error review appropriate.

plainly erroneous and prejudicial" such as to warrant reversal.[3]  See Aspen

Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1516 (10th Cir.

1984), aff'd, 477 U.S. 585 (1985).

The plain error test is an exacting one.  Reversal is appropriate only "where

the error 'has seriously affected the fairness, integrity or public reputation of

judicial proceedings.'"  Id. (quoting Rowe International, Inc. v. J-B Enterprises,

647 F.2d 830, 835 (8th Cir. 1981)).  The test therefore requires more than a mere

showing that the instruction was erroneous and that the plaintiff prevailed.

Furthermore, in applying the plain error test, we must determine whether the

instructions at issue were "'hopelessly confusing'" and whether they "fail[ed] 'to

provide even the barest legal guideposts to aid the jury in rationally reaching a

decision.'"  Id. (quoting McNello v. John B. Kelly, Inc., 283 F.2d 96, 102 (3d Cir.

1960)).  The trial court instructed the jury that "[s]pecifically, the plaintiff claims

that she suffers from panic or anxiety attacks and depression, which she claims

are disabilities under the ADA. . . . [S]he claims the panic or anxiety attacks

prevented her from being able to commute to Topeka to her job."  Appellant's

App. at 37.  This instruction squarely meets the Aspen Highlands Skiing Corp.

standards.  The majority thus ignores the appropriate standard of review and the

---

[3] The instruction submitted could only have worked to the advantage of the employer; the trial court effectively gave the employer a second chance to challenge the employee's prima facie case.

record in this case when it concludes that the "jury had no guidance as to which endeavors it could properly consider as major life activities in reaching its decision." Maj. Op. at 7-8.

The majority's approach is at variance with the settled application of the plain error doctrine. This is made all the more manifest by a review of the results reached in all of the cases on which the majority relies for its use of the plain error rule. See Ryder v. City of Topeka, 814 F.2d 1412, 1427-28 (10th Cir. 1987) (subjecting jury instruction to plain error review because of party's failure to raise objection and finding that "[n]o such error appears [in the] record"); Aspen Highlands Skiing Corp., 738 F.2d at 1516 (applying plain error test and stating that "circumstances do not justify setting aside the verdict and judgment on grounds not raised below"); Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 924-25 (10th Cir. 1984) (refusing to reverse under the plain error standard of review because "[t]he totality of [the] instructions" supports the jury's verdict). Significantly, in Phillips v. Duro-Last Roofing, Inc., 973 F.2d 869 (10th Cir. 1992), the only case cited by the majority in which a reversible error was found, the court did not apply the plain error doctrine because "under unique circumstances" it reviewed the case under the same standard "as if an objection had been timely made." Id. at 871. I do not believe this case presents the exceptional circumstances that justify reversal on plain error grounds.

Moreover, our case law dictates that "[w]hen a district court erroneously submits a question of law to the jury, we employ a de novo standard of review and address the legal question." Driggins v. City of Oklahoma City, 954 F.2d 1511, 1513 (10th Cir. 1992). I see no reason to do otherwise here. Given the nature of our geographically dispersed, transportation-dependent society and the ubiquity of commuting, it is certainly debatable whether commuting is an activity of sufficient "significance" to deserve "inclusion under the statutory rubric" of major life activity. Bragdon, 118 S. Ct. at 2205; see also Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 151 (2d Cir. 1998). The majority's disposition of this case defers resolution of that issue to a later day.