**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 22 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HOWARD PRINCE,

    Plaintiff-Appellant,

    v.

RIECKE CLAUSSEN, Mesa County
Sheriff,

    Defendant-Appellee.

No. 98-1064
(D.C. No. 96-S-2384)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

Plaintiff Howard Prince appeals the district court's entry of summary judgment in favor of defendant Riecke Claussen on Prince's claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and 42 U.S.C. § 1983. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

Prince began working as a deputy sheriff with the Mesa County, Colorado, Sheriff's Department in 1987. In November 1990, he injured his right shoulder while on the job, and he aggravated the condition two months later in another workplace accident. He was diagnosed with acute impingement of the supraspinatus tendon in the right shoulder and underwent two surgeries in 1991. Dr. David Mayer rated the permanent impairment to Prince's right arm and neck as an eighteen percent "whole person" impairment. Prince's activities were temporarily limited to light duty work, but he was released in September 1991 to work without restriction.

Prince was reinstated to the SWAT team in late 1991. He allegedly spoke to his supervisor, Lieutenant Earl Houck, about limitations on his work activities and Houck accommodated him by not putting him in situations where he was required to make physical arrests. Less than two months after rejoining the SWAT team, Undersheriff Dave Wooley removed Prince from the SWAT team, allegedly because of Prince's decision to file a workers' compensation claim, and Prince returned to his job as a street patrol deputy.

In September 1994, Prince injured his left knee on the job and he had arthroscopic surgery. He returned to work several weeks later on light duty status. In December 1994, Dr. Ronald Fawcett rated Prince's permanent

impairment from the knee injury as a six percent "whole person" impairment. Dr. Fawcett imposed no work restrictions on Prince.

In 1994, Prince supported Bob Silva in his unsuccessful election campaign for sheriff against incumbent Claussen. According to Prince, he was told by three unidentified members of the sheriff's staff he would be discharged for his disloyalty if Claussen lost the election. Houck also claimed Wooley told a group of deputies in 1992, following Claussen's first election, they would be terminated if they supported Claussen's opponent. Prince notes numerous individuals who supported Silva lost their jobs following his defeat; however, Prince presents no evidence the discharges were related to political activities.

On December 27, 1994, Wooley notified Prince that a discipline review committee had been appointed to investigate Prince's alleged violations of departmental disciplinary rules and procedures (abuse of power through intimidation of subordinate employee, insubordination, abuse of leave policies, and failure to report damage to patrol vehicle). Following a hearing, the committee recommended that Prince's employment be terminated, and that decision was upheld by the Discipline Appeals Board after another hearing. Claussen subsequently upheld the discipline review committee's decision on February 14, 1995.

In September 1996, Prince joined the Fruita, Colorado, police department

as a patrolman. Prince asserts before he began his job as a patrolman, he requested and was granted certain accommodations in his new job, including:

> wearing gun belt tilted lower on right side, velcro belt instead of leather with buckle to stay firm, not going out alone on domestic calls (go as backup), holster is mid-ride instead of high-ride, wear accessories on belt so they are accessible with left arm and not right, drive vehicle left-handed only, avoid physical altercations, no running in training or in patrol, no long periods of standing . . . [and no] arrest[s] without the assistance of another officer.

Aplt's App. at 477, ¶ 16. There is no evidence in the record suggesting such "accommodations" were required or requested during Prince's tenure with the Mesa County Sheriff's Department. Prince's duties in Fruita were nearly identical to his street patrol deputy duties in Mesa County.

## II.

This court reviews a grant of summary judgment de novo, applying the same legal standard used by the district court. Sundance Assocs., Inc. v. Reno , 139 F.3d 804, 807 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. If there is no genuine issue of material

-4-

fact in dispute, then we next determine if the substantive law was correctly applied by the district court." Id. (citation and quotation omitted).

III.

**Evidentiary Ruling**

We review evidentiary decisions in a summary judgment ruling for an abuse of discretion. Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1268 (10th Cir. 1998).

Prince contends the district court abused its discretion in refusing to consider affidavits of three former deputies. The district court correctly concluded Prince's submission of these affidavits was untimely. Prince has not shown good cause for waiting until December 1997 to file the three affidavits and to ask that the affidavits be considered in support of his summary judgment response filed September 9, 1997, when the three affiants were included on his list of potential witnesses almost a year earlier.

Even assuming the court erred in failing to consider the affidavits, Prince has suffered no prejudice. The affidavits contained nothing more than hearsay and speculation that the former deputies and others were terminated because of their support of Claussen's opponent. "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something

will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

## Section 1983 Claim

Prince alleges he was discharged as a result of his support for Silva in the 1994 election. Claussen insists he did not terminate Prince for political reasons and, even if he did, the law was not clearly established that such action contravened the First Amendment. We need not determine whether the law was clearly established because there is no evidence Prince lost his job based on his political affiliations.

To determine if a public employer has contravened an employee's first Amendment rights, we apply the four-part Pickering/Connick test. See Pickering v. Board of Educ., 391 U.S. 563 (1968); Connick v. Myers, 461 U.S. 138 (1983). We first look to whether the speech in question involves a matter of public concern. Dill v. City of Edmond, 155 F.3d 1193, 1201 (10th Cir. 1998) (citing Connick, 461 U.S. at 146). If so, we consider whether the employee's interest in the expression outweighs the employer's interest in regulating the speech "of its employees so that it can carry on an efficient and effective workplace." Horstkoetter v. Department of Pub. Safety, 159 F.3d 1265, 1271 (10th Cir. 1998) (citing Pickering, 391 U.S. at 568). Assuming this balance tips in favor of the employee, the employee must show his speech was a substantial factor in the employer's challenged action. Id. (citing Mt. Healthy City Sch. Dist. Bd. of Educ.

-6-

v. Doyle , 429 U.S. 274, 287 (1977)). If plaintiff makes such a showing, the employer may demonstrate it would have taken the same action against the employee even in the absence of the protected speech.        Id.

We assume here Prince's support for Silva was First Amendment protected conduct which outweighed any interest Claussen might have in maintaining a loyal and stable workforce. There is a paucity of evidence, however, to suggest Claussen discharged Prince as a result of his political activities. Although the relatively close temporal proximity between Prince's protected conduct and his subsequent termination may create an inference of unlawful retaliation,        see Ramirez v. Oklahoma Dep't of Mental Health     , 41 F.3d 584, 596 (10th Cir. 1994) (layoffs one and one-half months following plaintiff's submission of grievances reflected possible retaliatory motive by employer), there is nothing in the record undermining Claussen's nondiscriminatory explanation for Prince's discharge. Prince characterizes Claussen's explanations as pretextual based on comments of various colleagues (most of whom are unidentified) who allegedly said and/or heard that individuals supporting Silva would be fired. These statements are hearsay. Hearsay "that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill." Thomas v. IBM  , 48 F.3d 478, 485 (10th Cir. 1995) (citation and internal quotation

omitted).

Prince also argues Claussen ousted other deputies who supported Silva. His sole evidence is his observation that multiple persons who appeared in a campaign commercial for Silva are no longer with the sheriff's department. Other than hearsay and rank speculation, Prince offers no competent evidence that these individuals were terminated or not reappointed because of their political activities. Further, it is undisputed Claussen retained many deputies who had actively supported Silva (not just the two Prince suggests in his brief). Prince has failed to establish any genuine issue of material fact regarding his termination.

## ADA Claim

Prince contends the sheriff's department discriminated against him on the basis of a purported disability by (1) failing to consider accommodations to allow him to continue working with the SWAT, fire, and rescue teams, (2) failing to transfer him to other jobs within the department; and (3) terminating his employment.

The first two allegations are clearly time-barred. The ADA expressly adopts the enforcement procedures governing Title VII actions, including administrative exhaustion requirements and filing procedures. See 42 U.S.C. § 12117(a). An aggrieved party must file an administrative charge of discrimination within 300 days of the alleged unlawful employment practice. 42

U.S.C. § 2000e-5(e). The timely filing of such a charge is a prerequisite to suit. Martin v. Nannie & The Newborns, Inc., 3 F.3d 1410, 1414 (10th Cir. 1993). Although Prince has not cited dates, the record demonstrates the alleged refusals to accommodate and transfer took place in 1991 and 1992. Moreover, many of the incidents Prince references occurred prior to July 26, 1992, the effective date of the ADA, and, thus, were not unlawful. See Brown v. General Tel. Co. 108 F.3d 208, 209 (9th Cir. 1997) (per curiam) (ADA is not retroactive and does not apply to actions taken prior to statute's effective date) (citing Pub. L. No. 101-336, § 108, 104 Stat. 337 (1990)).

With respect to the discharge decision, Prince is unable to state a prima facie case. To state a prima facie claim of disability discrimination under the ADA, Prince must show (1) he is "disabled," (2) he is "qualified," i.e., able to perform essential functions of the job with or without reasonable accommodation, and (3) he was discriminated against because of his disability. Siemon v. AT&T Corp., 117 F.3d 1173, 1175 (10th Cir. 1997). An individual is considered "disabled" under the ADA if he has a physical or mental impairment that substantially limits one or more of his major life activities, has a record of such an impairment, or is regarded as having such an impairment. 42 U.S.C. § 12102(2).

Physical Impairment

In assessing whether an individual has a physical or mental impairment that substantially limits one or more major life activities, the court follows a three-step process. We first consider whether the individual has an impairment, and then examine whether the life activity upon which he relies constitutes a major life activity. Bragdon v. Abbott, 118 S. Ct. 2196, 2202 (1998). Finally, "tying the two statutory phrases together," we look to whether the impairment substantially limits the asserted major life activity. Id. We recently held "a plaintiff must articulate with precision the impairment alleged and the major life activity affected by that impairment." Poindexter v. Atchison, Topeka, and Santa Fe Ry. Co., 1999 WL 92255 at *4 (10th Cir. Feb. 24, 1999). A general statement that plaintiff has an impairment substantially impacting a majority life activity will not suffice. Id.

The ADA does not define impairment. However, the Supreme Court in Bragdon adopted the definition in the regulations issued by the Department of Health, Education, and Welfare in 1977. See 118 S. Ct. at 2202. The commentary following the regulations "contains a representative list of disorders and conditions constituting physical impairments." Id. (quoting 42 Fed. Reg. 22685 (1977), reprinted in 45 C.F.R. pt. 84, App. A at 334 (1997)). Prince does not explicitly specify his purported impairments but, based on his other

-10-

arguments, it appears he claims orthopedic difficulties flowing from his shoulder and knee injuries.

"Major life activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i) (1998). This list is merely illustrative. Other major life activities include, but are not limited to, sitting, standing, lifting, and reaching. Poindexter , 1999 WL 92255 at *3. "[I]f the asserted major life activity is not one of the examples listed . . ., under the plain meaning of the word 'major,' 'the touchstone for determining an activity's inclusion under the statutory rubric is its significance.'" Id. (citing Bradgon , 118 S. Ct. at 2205) (additional citation omitted). Prince maintains his impairments have implicated his ability to walk, stand, run, lift, throw, squat, and work. Each constitutes a major life activity under the ADA.

For a physical or mental impairment to be "substantially limiting" on a major life activity, an individual must be:

> (i) Unable to perform a major life activity that the average person in the general population can perform, or
> (ii) Significantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (1998). Prince has offered no evidence to support any

-11-

*substantial* limitations on his major life activities. Other than a one-sentence conclusory statement in his affidavit, his sole evidence consists of a "functional capacity evaluation report" by physical therapist Jane Whalen Price in April 1997. According to Price, Prince is able to engage in "sustained activity" (walking, standing, sitting) for up to two hours without a break, lift up to eighty pounds from the floor to thirty-two inches (knuckle height), and stoop on a frequent basis. Price concludes Prince's "[f]itness level is adequate for the job demands of a police officer." Aplt's App. at 611. Although it is conceivable Prince's injuries may have diminished his former physical capacities to some degree, he is not "significantly restricted" in his ability to perform major life activities as compared to the average person in the general population.

Record of Impairment

An individual may be classified as disabled under the ADA if he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k) (1998). Prince returned to his job following his 1991 and 1994 surgeries with full medical releases and no work restrictions. The fact that he was hospitalized during the surgeries does not establish a record of impairment. See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 645-46 (2d Cir. 1998) (quoting Burch

-12-

v. Coca-Cola Co. , 119 F.3d 305, 317 (5th Cir. 1997), cert. denied 118 S. Ct. 871 (1998)); Gutridge v. Clure , 153 F.3d 898, 901 (8th Cir. 1998).

Regarded as Having Impairment

Under this provision, an individual may be considered disabled if he:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
(3) Has none of the impairments defined in paragraphs (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

See 29 C.F.R. § 1630.2( l). The theory behind this regulation is that "society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment." School Bd. of Nassau County v. Arline , 480 U.S. 273, 284 (1987).

Prince argues the sheriff's department regarded him as disabled based on his requested accommodations as well as his workers' compensation injury reports. As to the accommodations request, Prince stated unequivocally in response to Claussen's first interrogatories that he had never requested accommodations during his employment. He later claimed in response to Claussen's second interrogatories that he had requested accommodations from

-13-

Houck in 1991. In the absence of any explanation from Prince for the change in his answer, we agree with the district court that the second interrogatories may be disregarded as an attempt to create a sham issue. See Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986). In any event, none of the requested accommodations suggested Prince was substantially limited in his ability to perform any major life activity. With respect to the workers' compensation reports, Prince's evaluations reflected he had no substantial limitations or work restrictions. In sum, the record does not support Prince's disability contention.

Finally, Prince contends the district court abused its discretion in denying his second motion to amend his complaint. The court did not abuse its discretion in denying Prince's motion which was filed long after the deadline to file such motions and after Claussen had filed a motion for summary judgment. Further, Prince has not alleged how the denial of his request to amend prejudiced his action. Prince concedes the proposed changes clarified damage and attorney fees requests, and were unrelated to his liability claims.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge