UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

S.V. DIXON,

        Plaintiff-Appellant,

v.

REGENTS OF THE UNIVERSITY
OF NEW MEXICO,

        Defendant-Appellee.

No. 99-2245
(D.C. No. CIV-98-725-SC/DJS)
(D. N.M.)

---

ORDER
Filed November 1, 2000

---

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

This matter is before the court on petition of appellant S. V. Dixon for

rehearing of this court's order and judgment filed October 6, 2000. The hearing

panel grants the petition in part and issues a revised order and judgment which

modifies the language of footnote four concerning a private cause of action under

the Family Education Rights and Privacy Act (FERPA).

The members of the hearing panel have considered appellant's arguments

on the merits of this court's disposition of his appeal, and conclude that the

original disposition was correct.  Therefore, the petition for rehearing is denied

on the merits.  A copy of the corrected order and judgment is attached.

Entered for the Court
Patrick Fisher, Clerk of Court

By:
    Keith Nelson
    Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 1 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

S.V. DIXON,

      Plaintiff-Appellant,

v.

REGENTS OF THE UNIVERSITY
OF NEW MEXICO,

      Defendant-Appellee.

No. 99-2245
(D.C. No. CIV-98-725-SC/DJS)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

After being expelled from the University of New Mexico School of Medicine, plaintiff S.V. Dixon filed this action alleging that the Regents of

---

\*　　This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the University of New Mexico (the University) violated her rights under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-213 and the Rehabilitation Act, 29 U.S.C. §§ 701-96. She also made claims under the Civil Rights Act of 1871, 42 U.S.C. § 1983, asserting procedural due process, substantive due process, and equal protection violations. The district court granted defendant's motion for summary judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Ms. Dixon's academic record shows that she had difficulty in gaining admittance to the medical school, in fulfilling course requirements, and in passing required national examinations. She eventually completed her second year of course work and, in May 1994, began phase II of medical school in the University hospital, consisting of clinical rotations focusing on various medical specialties. Although Ms. Dixon's performance was satisfactory in other third-year rotations, she failed the obstetrics-gynecology rotation (reputedly a high-stress endeavor) for performance and behavioral problems and also because she did not pass the final examination.

In April 1995, the University required Ms. Dixon to take a leave of absence, during which time she sought treatment for emotional difficulties. Later that year, she requested reinstatement, submitting a letter from her treating

therapist indicating the belief that Ms. Dixon "ha[d] recovered from her episode of depression" and was "continuing to work on other personal issues." Appellant's App. at 268. The therapist thought that Ms. Dixon, if re-admitted, would "function better academically," "be more capable of functioning interpersonally on clinical rotations," and could now "manage the academic and interpersonal stressors." Id.

The Committee on Student Promotions and Evaluations II allowed Ms. Dixon to return in September 1995, but required her to re-take all her third-year rotations and continue treatment with her therapist. The academic year following reinstatement, Ms. Dixon passed rotations in family medicine, pediatrics, and internal medicine. As for the obstetrics-gynecology rotation, the supervising physician and other members of the department noted a general improvement in her performance, but they continued to have serious reservations about her ability to function in a clinical setting. Ms. Dixon again failed the final examination. In spite of misgivings about Ms. Dixon's performance, the supervising physician permitted her to take the examination a third time. On this attempt, she passed with a marginal grade.

On November 26, 1996, a Committee on Student Promotions and Evaluations II convened to discuss Ms. Dixon's performance problems and her potential dismissal from medical school. On that day, for the first time,

Ms. Dixon was informed that she had passed the written examination in obstetrics-gynecology on her third try. At the meeting, Ms. Dixon was not permitted to question witnesses or present witnesses of her own, but both she and her therapist testified. The Committee recommended that Ms. Dixon be expelled because the "totality of [her] poor academic performance is such that the Committee found [she was] an unsuitable candidate for the MD degree and that [she did] not possess the qualities and skills necessary to enable [her] to be a safe and effective practitioner of medicine." Appellant's App. at 257. The letter informing Ms. Dixon of the decision also notified her of appeal rights.

Ms. Dixon's appeal letter was untimely; however, the Dean of the medical school allowed it to proceed to the next level, the Education Council. Ms. Dixon made both written and oral presentations before that body. Although the Education Council found fault with the way the Department of Obstetrics-Gynecology dealt with her final examination, it upheld the Committee's decision.

Ms. Dixon then appealed to the Dean, alleging that she had not been provided a fair and impartial hearing. The Dean reviewed Ms. Dixon's "overall academic and non-cognitive performance over the five years that [she had] been pursuing [her] medical education." Appellant's App. at 235. He also met with Ms. Dixon and interviewed some of the individuals she identified as being

familiar with her work. The Dean made the ultimate decision to expel Ms. Dixon based on her "failure to satisfactorily remediate the OB/Gyn clerkship and on [her] continued poor academic performance." Id.

Ms. Dixon then filed this lawsuit, arguing that the University had denied her substantive and procedural due process at all levels and failed to accommodate her emotional problems, as required by the ADA and Rehabilitation Act. The district court entered summary judgment in favor of the University, holding that plaintiff could not prove (1) that she was entitled to the protection of the ADA and Rehabilitation Act because she could not prove she had a statutorily-cognizable disability or handicap; or (2) that her constitutional rights had been violated in any way. Upon the district court's entry of summary judgment, Ms. Dixon appealed, arguing that the district court erred in analyzing her claims.

## DISCUSSION

We review de novo the district court's decision granting summary judgment and apply the same legal standard as the district court. See Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1313 (10th Cir. 1999). Summary judgment is appropriate on a record demonstrating that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[W]e view the factual record and inferences

-5-

therefrom in the light most favorable to the nonmoving party." Bullington,
186 F.3d at 1313.

## Disability-related claims

As a threshold matter, we must address the University's motion for leave to
file a supplemental memorandum in order to assert that it has Eleventh
Amendment immunity from an ADA claim. See Buchwald v. University of N.M.
Sch. of Med., 159 F.3d 487, 494 n.3 (10th Cir. 1998) (noting that the University
of New Mexico School of Medicine and university regents are "arms of the state"
and entitled to Eleventh Amendment immunity). The University's argument was
based on the Supreme Court's holding that the Eleventh Amendment precludes
claims under the Age Discrimination in Employment Act (ADEA) against the
states. Kimel v. Florida Bd. of Regents, 120 S. Ct. 631, 650 (2000). In light of
the Kimel decision, this court has reconsidered our prior determination in Martin
v. Kansas, 190 F.3d 1120, 1127-28 (10th Cir. 1999), that the ADA abrogated the
states' Eleventh Amendment immunity. See Cisneros v. Wilson, No. 98-2215,
2000 WL 1336658 (10th Cir. Sept. 11, 2000). At the conclusion of its analysis,
a panel of this court concluded that, unlike the ADEA, the ADA amounted to
a valid abrogation of Eleventh Amendment immunity. See id. at *16. It therefore
reaffirmed the Martin holding. See id.

-6-

"'We are bound by the precedents of prior panels [of this court] absent en banc reconsideration or a superseding contrary decision by the Supreme Court.'" United States v. Malone, 222 F.3d 1286, 1294 (10th Cir. 2000) (quoting In re Smith, 10 F.3d 723, 724 (10th Cir. 1993)). [1] Because Cisneros holds that the states are not immune from ADA claims, we proceed to the merits of Ms. Dixon's ADA claim.

Ms. Dixon argues that the district court erred in concluding that she did not have a disability as defined by the ADA. See Poindexter v. Atchison, Topeka & Santa Fe Ry. Co., 168 F.3d 1228, 1230 (10th Cir. 1999) (holding that the disability determination is a matter of law for the court to decide). [2] The Supreme Court has developed a three-step process for making the relevant determination. The plaintiff must (1) identify an impairment recognized by the ADA; (2) state the relevant major life activity as that term is defined under the ADA; and (3) show that the impairment substantially limits the major life activity. Poindexter, 168 F.3d at 1230 (citing Bragdon v. Abbott, 524 U.S. 624, 631 (1998)). "[A] plaintiff must articulate with precision the impairment alleged and

---

[1]    We note, however, that the Supreme Court has granted certiorari on the Eleventh Amendment immunity issue. See University of Ala. at Birmingham Bd. of Trustees v. Garrett, 120 S. Ct. 1669 (2000).

[2]    The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

the major life activity affected by that impairment." Id. at 1232. A general statement that the plaintiff has an impairment substantially impacting a major life activity will not suffice. See id.

Here, Ms. Dixon gives her claim of depression only vague contours and fails to articulate any particular major life activity that was affected by the asserted impairment. See Appellant's Br. at 8 (stating generally that "her depression [a]ffected ever[y] part of her life"). Furthermore, there is no evidence that the University regarded her as having a disability. The district court correctly determined that Ms. Dixon has failed to show a disability under the ADA.

Ms. Dixon also asserts cause of action under the Rehabilitation Act, which prohibits discrimination against disabled persons who are otherwise qualified for participation in programs receiving federal funding, including grants to public universities, see 29 U.S.C. § 794(a), (b)(2)(A). The Rehabilitation Act defines "disability" in the same way as the ADA. See Bragdon, 524 U.S. at 624, 631. Therefore, Ms. Dixon's Rehabilitation Act claim suffers from the same flaw as her ADA claim: lack of a showing that she has a disability covered by the applicable statute.

Based on the record before us, Ms. Dixon is not entitled to the protections of either the ADA or the Rehabilitation Act. Accordingly, we need not reach any issues concerning the accommodations she wished to receive from the University.

## Constitutional claims

Plaintiff asserts that she was deprived of both procedural and substantive due process. "[P]rocedural due process ensures that a state will not deprive a person of life, liberty or property" without employing "fair procedures; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures" used. Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998) (quoting Archuleta v. Colorado Dep't of Insts., Div. of Youth Servs., 936 F.2d 483, 490 (10th Cir. 1991) (alteration in Archuleta)).

For both types of claims, a plaintiff must show possession of an interest to which due process protection attaches. See Watson v. University of Utah Med. Ctr., 75 F.3d 569, 577 (10th Cir. 1996) (procedural due process); Clinger v. New Mexico Highlands Univ., 215 F.3d 1162, 1167 (10th Cir. 2000) (substantive due process). It has not been "clearly established" that a plaintiff holds a "'property' or 'liberty' interest in continued enrollment at the [University of New Mexico] Medical School despite [her] academic failures." Trotter v. Regents of the Univ. of N.M., 219 F.3d 1179, 1184 (10th Cir. 2000). For purposes of the instant case, however, we assume without deciding that plaintiff has such a protected interest.

Turning to Ms. Dixon's procedural due process claim, we must determine

whether she was afforded "an appropriate level of process." Watson, 75 F.3d at 577. Our review of the record reveals that she had the opportunity to present written evidence and make oral statements to the responsible university officials. "[T]he due process clause does not require that a student dismissed from a state medical school for academic reasons be given a hearing." Trotter, 219 F.3d at 1185 (citing Board of Curators of the Univ. of Mo. v. Horowitz, 435 U.S. 78, 86 (1978)). [3] Ms. Dixon was accorded all the process required by the Fourteenth Amendment. [4]

---

[3] The Supreme Court has observed that procedural due process requirements for students may vary depending on whether the action taken is "disciplinary" or "academic." Board of Curators, 435 U.S. at 87-90. To the extent Ms. Dixon asserts that she was entitled to the additional procedural protections that may attach to disciplinary expulsions, the argument is unavailing. In Board of Curators, the Court explained that a decision to dismiss the respondent from medical school

> rested on the academic judgment of school officials that she did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal. Such a judgment is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision. Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking.

Id. at 89-90. The University's decision regarding Ms. Dixon was genuinely "academic."

[4] Ms. Dixon also asserts that the University violated her procedural due

(continued...)

-10-

For a substantive due process claim, Ms. Dixon must show that the University's actions "would shock the conscience of federal judges," or "were arbitrary or lacking a rational basis." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 528-29 (10th Cir. 1998) (quotations omitted). Here, the University's decision to dismiss Ms. Dixon was a product of ordered professional judgment and was not shocking, arbitrary, or irrational in any way. Accordingly, she was not denied substantive due process.

## CONCLUSION

For the reasons stated above, we conclude that the district court correctly entered summary judgment in favor of the University. We AFFIRM the district court's judgment. The University's motion for leave to file a supplemental memorandum is denied.

---

[4](...continued)
process rights because it did not comply with the regulations developed under the Family Education Rights and Privacy Act (FERPA), 20 U.S.C. § 1232(a)(2)), or its own procedures. FERPA does not create a direct private cause of action, see Fay v. South Colonie Cent. Sch. Dist., 802 F.2d 21, 33 (2d Cir. 1986), or expand constitutional rights, Falvo v. Owasso Indep. Sch. Dist. No. I-011, No. 99-5130, 2000 WL 1472451, *3 (10th Cir. Oct. 4, 2000). Although we recognize that certain violations of FERPA provide a basis for a civil rights lawsuit under 42 U.S.C. § 1983, see id. at *6 (discussing a privacy right contention), we determine that, in this case, Ms. Dixon has no actionable FERPA-related claim. Moreover, a school's failure to follow its own procedures does not, in itself, give rise to a due process violation. See Trotter, 219 F.3d at 1185 (citing cases).

-11-

Entered for the Court


Stephen H. Anderson
Circuit Judge