**Lynne THALOS, Plaintiff,**

v.

**DILLON COMPANIES, INC., a Kansas Corporation, d/b/a King Soopers, Inc., Defendant.**

**No. 98–B–1661.**

United States District Court, D. Colorado.

March 8, 2000.

Amy F. Robertson, Timothy P. Fox, Fox & Robertson, P.C., Denver, CO, for plaintiff.

P. Kathleen Lower, Darin Mackender, Otten, Johnson, Robinson, Neff & Ragonetti, P.C. Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this employment discrimination action, Defendant Dillon Companies, Inc., d/b/a King Soopers, Inc. ("King Soopers"), moves pursuant to Rule 56(b) for summary judgment on Ms. Thalos' disability discrimination claim. The motion is adequately briefed and oral argument would not materially aid its resolution. For the reasons set forth below, I grant in part and deny in part King Soopers' motion for summary judgment as to Ms. Thalos' claim under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). Jurisdiction is proper in this court pursuant to 28 U.S.C. §§ 1331 and 1343.

### I.

The following facts are relevant to my determination of King Soopers' motion for summary judgment and are undisputed or, if disputed, viewed most favorably to Ms. Thalos. Ms. Thalos suffers from cerebral palsy, a condition she has had since birth. In November 1995, she applied to King Soopers to work as a part-time pharmacist with one of the retail pharmacies in its grocery stores in the Denver metro area. She was interviewed in December 1995, by Mr. Garcia and Ms. Gallay, King Soopers' pharmacists. She was not hired.

Ms. Thalos was born in 1961 and diagnosed with cerebral palsy several years later. She graduated from South Dakota State University with degrees in journalism and pharmacy. She moved to Denver in 1986 and since this time has worked in a number of hospital pharmacies, including Fitzsimons Army Medical Center, the Veterans Administration Hospital, Vencor Hospital, and Presbyterian/St. Luke's Hospital. She is a licensed pharmacist. Ms. Thalos is married and has three sons. In 1999, she completed her masters degree in counseling.

Ms. Thalos' cerebral palsy causes a lack of coordination, an intention tremor which produces unsteadiness, a "scissors" gait, and difficulty with rapid or fine movements. (Thalos Declaration, ¶ 10). Cerebral palsy also affects her speech. (Thalos Declaration, ¶ 10). She argues that although these restrictions place many concrete limitations on her activities, "the most significant restriction is that actions that would come naturally to a person without cerebral palsy require focus, effort and calculation by Ms. Thalos." (Opposition, p. 5).

In Ms. Thalos' 1995 interview with King Soopers, she disclosed her cerebral palsy to her interviewers, Ms. Gallay and Mr. Garcia. She explained that she may not be as fast as some pharmacists at counting pills, but added that in her previous jobs she quickly learned to make intravenous bags. She also allegedly stated that she assumed if anyone had difficulty understanding her, there would always be someone else in the pharmacy to assist. Contrary to Ms. Gallay and Mr. Garcia's testimony, Ms. Thalos contends that at no time during the interview did she state that she could not work alone. Nor did she request or require any accommodation to perform the job.

When Mr. Garcia informed Ms. Thalos that she would not be hired, she testified

that he explained, "We can't accommodate your handicap." (Thalos Deposition, p. 205). Ms. Thalos attempted to contact King Soopers several times after this rejection, to no avail. She filed suit in this Court on August 3, 1998, alleging discrimination in violation of the ADA.

## II.

The purpose of a summary judgment motion is to assess whether trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Rule 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that issues of undetermined material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. Rule 56(e); *see also Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). These facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Mares*, 971 F.2d at 494. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *see White* at 360 (citations omitted), as are conclusory assertions that factual disputes exist. *See Anderson*, 477 U.S. at 247–248, 106 S.Ct. 2505.

## III.

■ Ms. Thalos' only claim against King Soopers is for violation of the ADA. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). It defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." *Id.* at § 12111(8). Accordingly, to qualify for relief under the ADA, a plaintiff must establish that: (1) she is a disabled person; (2) she is qualified; and (3) the employer discriminated against her because of her disability. *See White*, 45 F.3d at 360–361. King Soopers argues Ms. Thalos cannot meet her prima facie burden of establishing that she is a disabled person within the meaning of the ADA.

" 'Disability' under the ADA is a term of art." *Poindexter v. Atchison, Topeka and Santa Fe Railway Co.*, 168 F.3d 1228, 1230 (10th Cir.1999). Under the facts of this case, Ms. Thalos may show that she is a

disabled person in two ways: (1) that she has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" or (2) that she is "regarded as having such an impairment." 42 U.S.C. § 12102(2). Ms. Thalos argues both that she is disabled within the meaning of the ADA and that King Soopers regarded her as having a disability. King Soopers argues that Ms. Thalos is not "disabled" and was not "regarded as having such an impairment." I will address each argument in turn.

**A. Disabled: "A physical … impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A).**

■ Analysis of whether a "disability" exists proceeds in three steps. *See Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); *Poindexter,* 168 F.3d at 1230. First, I must determine whether Ms. Thalos has an impairment. *See id.* King Soopers does not dispute that Ms. Thalos has a physical impairment, cerebral palsy. I agree and, therefore, conclude that this step is satisfied. Second, I must identify the life activities upon which Ms. Thalos relies and determine whether they constitute major life activities under the ADA. *See id.* Ms. Thalos identifies three major life activities: walking, speaking, and performing manual tasks or "fine motor coordination." King Soopers does not dispute that each of these identified activities constitute major life activities. Again, I agree and, therefore, conclude that this second step is satisfied. Third, I must determine whether the impairment "substantially limits" these major life activities. *See id.* This step is contested.

An impairment "substantially limits" a major life activity when the individual is: (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1) (1995). Section 1630.2(j)(2) lists three factors to consider in determining whether an individual is substantially limited in a major life activity: "(1) The nature and severity of the impairment; (2) The duration or expected duration of the impairment; and (3) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). King Soopers does not dispute that cerebral palsy is an incurable lifetime impairment.

■ Today's plaintiffs must clear a high bar to establish a disability for purposes of the ADA. Although the Supreme Court has stated that the ADA "addresses substantial limitations on major life activities, not utter inabilities," *Bragdon,* 524 U.S. at 640, 118 S.Ct. 2196, the Court requires an exacting showing. For example, the Supreme Court emphasizes that the ADA "concerns itself only with limitations that are in fact substantial," *Albertsons, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999), and "substantial" suggests "considerable" or "specified to a large degree." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The fact that a person with an impairment performs her major life activities "differently" than the rest of the population will not suffice to establish disability under the ADA. *See id.* (finding that the fact that a monocular plaintiff performed the major life activity of seeing by using only one eye instead of two was only a "difference" and not, per se, a substantial limitation). The Supreme Court has further concluded that mitigating measures must be taken into account in judging whether an individual possesses a disability. *See Sutton,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450. In *Kirkingburg,* the Supreme Court clarified that this includes an individual's own

mitigating ability to compensate for an impairment. *See Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 ("We see no principled basis for distinguishing between measures undertaken with artificial aids, like medications and devices, and measures undertaken, whether consciously or not, with the body's own systems."). Finally, the Supreme Court affirms that disability is measured on a case-by-case basis, looking at the effect the impairment has on the life of the individual. *See Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518, (there is a "statutory obligation to determine the existence of disabilities on a case-by-case basis"); *see also Bragdon,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540. The Supreme Court states that "[t]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, *but rather on the effect of that impairment on the life of the individual." See Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (citing 29 C.F.R. § 1630, App. § 1630.2(j)) (emphasis added); *see also Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 902 (10th Cir.1997).

■ The Tenth Circuit recognizes the Supreme Court's high threshold to establish "disability" for purposes of the ADA. *See e.g., Sorensen v. University of Utah Hospital,* 194 F.3d 1084 (10th Cir.1999) (plaintiff diagnosed with multiple sclerosis found not to be "disabled" for purposes of ADA). The Tenth Circuit holds that "[f]or an impairment to substantially limit a major life activity, the individual must be unable to perform, or be significantly limited in the ability to perform, an activity compared to an average person in the general population." *See id.*

Under these daunting standards, I cannot conclude that Ms. Thalos has shown a genuine issue of fact that she is substantially limited by her cerebral palsy in the major life activities of walking, speaking, or manual dexterity. Ms. Thalos is a commendable example of a person with an impairment who has succeeded in accommodating her impairment to achieve many successes in both her personal and professional life. She walks, talks, and performs manual activities differently than the average person. No doubt, as she contends, she has to use focus, concentration, and energy to control her muscles when walking, speaking, and using her hands. (Opposition, p. 20). But the Supreme Court requires that I consider mitigating measures that she herself has taken, whether consciously or not, with her own body's systems. *See Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518. Nor may I consider whether Ms. Thalos performs her major life activities in a significantly different manner. *See Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518. Instead, I must look to whether Ms. Thalos is "significantly *restricted,"* as compared to the average person in the general population, as to the condition, manner or duration under which she can perform these activities. 29 C.F.R. § 1630.2(j)(1). Ms. Thalos has failed to show under controlling authority a genuine issue that she is significantly restricted. Instead, to her credit, she defies restrictions in her daily life.

■ Ms. Thalos' professed difficulty in walking and her different manner of walking do not rise to the level of a substantial impairment of her ability to walk. She does not use any aid to walk and does not wear specialty shoes. Walking and climbing stairs encompass typical activities in her daily lifestyle. Ms. Thalos, the mother of three boys, lives in a two-story house with the master bedroom on the second floor. While at work at the Hospital, she climbs the stairs between floors because it is faster than the elevators. (Thalos Deposition, p. 110). She cleans her house, does laundry, cooks, shops for groceries, and shops at the mall. (Thalos Deposition, p. 54–60, 118). She enjoys hiking. (Thalos Deposition, p. 96–99). Although she may not always be able to keep pace with others and climbs down stairs slowly and with the help of a hand-rail, a reasonable trier

of fact could not find that she is substantially limited in the major life activity of walking.

■ Likewise, the fact that Ms. Thalos sounds different from most people when talking and has to concentrate on enunciation does not mean that she is substantially limited in the major life activity of talking. She testified for nearly two days giving her deposition in this case without any apparent problems. As a hospital pharmacist she must communicate accurately and confidently. She has attended several national pharmacist conventions and at a 1984 convention, she was asked to, and did, address the assembled representatives of the National Pharmaceutical Council. (Thalos Deposition, pp. 102–104). Again, a reasonable trier of fact could not find that she is substantially limited in the major life activity of talking.

■ Finally, the same conclusion attends as to whether Ms. Thalos is substantially limited in the major life activity of performing manual tasks. She can swim, ride bicycles, and has piloted a plane. (Thalos Deposition, p. 96–99). Ms. Thalos has worked in hospital pharmacies for over 10 years and drives herself daily to and from Presbyterian/St. Luke's Hospital, a distance of approximately 15 miles. (Thalos Deposition, p. 5–6). Her car is not specially equipped and she has no restrictions related to her cerebral palsy on her driver's license. (Thalos Deposition, p. 6). In the video tape that she submitted with her summary judgment motion, she is shown handwriting notes and filling out forms, typing on the computer, and, perhaps most impressively, following a complex procedure in making intravenous bags. In making the I.V. bags she must inject appropriate and precise doses using syringes and pump needles and precisely placing the needles in I.V. bags. (Thalos Deposition, p. 87–88). Although she testified that she fills the I.V. bags differently than other pharmacists (Thalos Deposition, p. 175–176)—by putting her hands on the table instead of holding the materials in the air—I cannot take into account the differences with which she performs these tasks but only whether she is substantially limited. Similarly, although she argues that this activity extracts a tremendous amount of muscle control (Opposition, p. 22), this is a mitigating adaptive behavior. I must consider her impairment in its mitigated state. *See, e.g., Sutton,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450.

Under controlling Supreme Court and Tenth Circuit precedent, I am compelled to conclude that Ms. Thalos has failed to meet her summary judgment burden on the question whether her cerebral palsy substantially limits her proffered major life activities for purposes of the ADA's definition of "disability." I turn then to whether Ms. Thalos is disabled as "being regarded as having such an impairment."

**B. Disabled: "Being regarded as having such an impairment."**

Individuals who are "regarded as" having a disability are also "disabled" within the meaning of the ADA. See § 12102(2)(C). Ms. Thalos contends that King Soopers regarded her as substantially limited in the major life activities of walking, speaking, performing manual tasks, interacting with others, and working. King Soopers admits that they were aware of Ms. Thalos' impairment, but the mere fact of awareness is insufficient to demonstrate that it regarded Ms. Thalos as disabled.

The ADA provides that having a disability includes "being regarded as having," § 12102(2)(C), "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," § 12102(2)(A). As the Supreme Court explains,

There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment sub-

stantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often "resul[t] from stereotypic assumptions not truly indicative of . . . individual ability." See 42 U.S.C. § 12101(7). *See also School Bd. Nassau Cty. v. Arline*, 480 U.S. 273, 284, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) ("By amending the definition of 'handicapped individual' to include not only those who are actually physically impaired, but also those who are regarded as impaired and who, as a result, are substantially limited in a major life activity, Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment"); 29 CFR pt. 1630, App. § 1630.2(1) (explaining that the purpose of the regarded as prong is to cover individuals "rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities").

*Sutton,* 119 S.Ct. at 2149–2150.

█ I conclude that Ms. Thalos has established genuinely disputed issues of material fact as to whether King Soopers mistakenly believed that her cerebral palsy substantially limits one or more of her major life activities. For example, Ms. Gallay testified that she was concerned about Ms. Thalos' ability to communicate with customers and had a "concern [about] their willingness to talk to her." (Gallay Deposition, pp. 70–71). Mr. Garcia testified that he perceived Ms. Thalos as having a "handicap." (Garcia Deposition, p. 74). Ms. Thalos also testified that Mr. Garcia told her, "We can't accommodate your handicap." (Thalos Deposition, p. 205). Because I conclude that Ms. Thalos has met her burden in raising disputed issues of fact, I deny King Soopers' motion for summary judgment on this basis.

## IV.

Although the parties concentrate their arguments on whether Ms. Thalos is "disabled" for purposes of the ADA, they also briefly discuss the other elements of the ADA claim for purposes of summary judgment. I conclude that Ms. Thalos' ADA claim survives summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

Defendants only contest the disability factor of Ms. Thalos' prima facie case. They do not argue that she is not qualified or that she was not discriminated against. *See White,* 45 F.3d at 360–361 (requiring a plaintiff to show that she is a disabled person, she is qualified, and the employer discriminated against her because of her disability). Because I determine that Ms. Thalos' has met her summary judgment burden under the "regarded as" definition, I conclude that Ms. Thalos has met her prima facie burden for purposes of the ADA.

The burden shifting analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to ADA claims. *See Hardy v. S.F. Phosphates Ltd. Co.,* 185 F.3d 1076, 1079 (10th Cir.1999). Under that analysis, once Ms. Thalos carries the burden of raising a genuine issue of material fact on each element of her prima facie case, as she has done here, the burden shifts to King Soopers to offer a legitimate nondiscriminatory reason for its employment decision. If Defendants articulate a nondiscriminatory reason, the burden shifts back to Plaintiff to show a genuine issue of material fact as to whether Defendants' reason for not hiring her is pretextual. *See Taylor v. Pepsi–Cola Co.,* 196 F.3d 1106, 1109 (10th Cir.1999).

King Soopers has offered legitimate, nondiscriminatory reasons for its employment decisions. Those reasons include Ms. Thalos' alleged self-described lack of speed in filling prescriptions, her alleged concern about her ability to communicate with customers, and her associated assumption that there would always be an-

other person on duty with her in case of customer concern. (Garcia Deposition, p. 65–67). Ms. Thalos has succeeded in showing genuine issues of material fact as to whether these reasons are pretextual. For example, Ms. Thalos presents evidence that she never asked for any accommodation and never stated that she could not work alone. Further, she offers evidence that King Soopers failed to follow their own accommodation procedures even if she had made such a request. Ms. Thalos also testified that she offered to demonstrate her pill-counting skill to show her speed and that several pharmacists hired by King Soopers are very slow in counting pills. She further demonstrates that King Soopers has hired employees with only hospital experience and has also hired employees with heavy foreign accents, despite their professed concern that customers may not understand them.

Accordingly, I ORDER that:

(1) Defendant King Soopers' motion for summary judgment is DENIED.