In re William James HUYCK, III SS# 030–48–9371 and Maria Zita Huyck SS# 375–66–1546, Debtors.

Mayflower Capital Company, Plaintiff,

v.

William James Huyck, III and Maria Zita Huyck, Defendants.

Bankruptcy No. 97–22373–SBB.
Adversary No. 99–1818–SBB.

United States Bankruptcy Court, D. Colorado.

Aug. 21, 2000.

Neal K. Dunning, Harvey Kramer, Brown, Bernardini & Dunning, P.C., Denver, CO, for Mayflower Capital Company.

Stephen Berken, Denver, CO, for William James Huyck and Maria Zita Huyck.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion for Summary Judgment

filed by Plaintiff, Mayflower Capital Company ("Plaintiff"), and the Response thereto filed by the Defendant/Debtors, William James Huyck, III and Maria Zita Huyck ("Defendants" or "Debtors"). The Court, having reviewed the file, heard the statements of counsel, and being otherwise advised in the premises, enters the following findings of fact, conclusions of law and order.

## I. BACKGROUND

This dispute raises an interesting question and one of first impression in this District. In the within case, the Chapter 13 Debtors, as is customary in many Chapter 13 cases, provided for a cure of their mortgage arrearage in their plan and for continuing payments on their mortgage "outside the plan." The Debtors completed their plan and received a discharge of debt. Thereafter, the Debtors' defaulted on their mortgage, and the Plaintiff foreclosed and made a deficiency bid in acquiring the property. Succinctly stated, the issue deals with what, if any, impact the Chapter 13 discharge of debt has on the creditors' deficiency claim.

For the reasons set forth herein, this Court concludes that the Plaintiff's Motion for Summary Judgment should be GRANTED, in part. The Court shall grant the relief requested in Plaintiff's First Claim for Relief declaring that the deficiency amount owed to Plaintiff by the Defendants has not been discharged by the completion of Defendants' Chapter 13 bankruptcy case.[1]

## II. ISSUES BEFORE THE COURT

Three issues are presented to this Court by the Motion for Summary Judgment.

1. Whether a debtor can modify the rights of a creditor holding a claim which

---

1. This Court will not, at this time, revoke the Defendants' discharge pursuant to 11 U.S.C. § 1328(e) or award Plaintiff its costs and attorney's fees in this action as the Motion for Summary Judgment did not address these issues and there are no affidavits or other evidence supporting the Plaintiff's Second Claim for Relief presently before the Court.

is secured by debtor's principal residence *and* other collateral.

2. Whether a claim which is (a) secured, in part, by debtor's principal residence and, in part, by other collateral, (b) scheduled by a debtor as oversecured and (c) dealt with, at least in part, in the Chapter 13 plan—which provided that the arrearage will be paid through the plan and that regular monthly payments will be made outside of the plan—qualifies as "debts provided for by the Plan" so as to make the debt dischargeable under 11 U.S.C. § 1328(a).

3. Whether a Chapter 13 debtor can retroactively declare a debt discharged after confirmation, discharge and case closing, where (a) the plan does not provide expressly for the discharge of the debt, (b) the debtor made no attempt during the pendency of the bankruptcy case to obtain a valuation of the property, and (c) the debt was scheduled as oversecured but when—after confirmation, discharge and case closing—a foreclosure sale results in a deficiency.

### III. *FACTS*

The underlying facts related to the Plaintiff's First Claim for Relief are uncontested by the parties. On February 4, 1997, Defendants executed a Promissory Note ("Note") in favor of Community Bank of Parker ("Community Bank"), in the sum of $202,195.96.00. According to the terms of the Note, Defendants agreed to make 37 monthly payments of $1,744.00 and a final balloon payment for the remaining balance on April 4, 2000. The Note was secured by a Deed of Trust on real property located in Douglas County, State of Colorado legally described as:

LOT 25 BLOCK 1, STONEGATE FILING NO. 6D, COUNTY OF DOUGLAS, STATE OF COLORADO

and commonly known as 15918 Ledge Rock Drive, Parker, Colorado 80134 ("Property"). On February 7, 1997, the Deed of Trust securing the Note was filed with the Douglas County Clerk and Recorder.

On September 8, 1997, Defendants filed for relief under Chapter 13 of the Bankruptcy Code. Defendants provide in Schedule D of their bankruptcy schedules that the Property is valued at $220,000.00 with a first Deed of Trust on the *"residence and business"* of the Defendants in the amount of $206,837.00. Thus, based on the Defendants' schedules, Community Bank was oversecured in the sum of $13,163.00.

On May 6, 1998, this Court confirmed the Defendants' Third Amended Plan ("Plan"). The Plan stated that the claim of Community Bank was *"secured only by an interest in real property that is the debtor's principal residence."* The Plan stated that a default in the amount of $5,323.29 would be cured at the rate of 10.00% over 24.47 months. Furthermore, the Defendants' Plan provided for regular monthly payments to be made outside of the Plan in the sum of $1,774.00. The Plan provided that the Defendants would make 36 payments of $270.00 to the Chapter 13 Trustee, with the final payment due on October 6, 2000.

On January 14, 1999, Defendants made an early payoff of their Plan. A lump sum payment of $9,720.00 was paid to the Chapter 13 Trustee. The payoff funds were obtained from a settlement in a breach of warranty or negligence suit against the builder of the Property for defective construction and or breach of warranty. The parties have agreed that the settlement funds received by the Defendants from the builder were property of the bankruptcy Estate. In addition, the balance of the settlement funds which the Defendants received from the home builder—beyond those sums utilized for the early payoff—were not paid into the bankruptcy Estate. On March 5, 1999, this Court entered its Order Discharging Defendants After Completion of Chapter 13 Plan ("Discharge Order") which provided that the Defendants would be discharged from "all debts provided for by the plan."

After the Court entered its Discharge Order and as a result of a default under the Note and Deed of Trust, Norwest Bank Colorado, N.A. ("Norwest"), as successor-in-interest to Community Bank, commenced a foreclosure action against the Defendants. At the foreclosure sale on June 22, 1999, Norwest was the successful bidder. Norwest made a deficiency bid of $164,250.00 for the Property. As a result of the deficiency bid, the Defendants were potentially liable to Norwest, under the terms of the Note, for a $61,529.07 deficiency.

On July 26, 1999, Norwest assigned its rights to the Note to Plaintiff. Plaintiff, on August 2, 1999, commenced a deficiency suit against Defendants in Douglas County District Court. Defendants did not file an answer in the Douglas County proceeding. However, bankruptcy counsel for Defendants, Mr. Stephen Berken, did correspond with counsel for the Plaintiffs advising that the Chapter 13 bankruptcy case "modified" Plaintiff's claim and that such "modification was made an order of the court when the case [was] confirmed." As result of the correspondence from Mr. Berken, Plaintiff dismissed its deficiency action. Subsequently, on November 4, 1999, Plaintiff filed its Complaint with this Court seeking (a) under its First Claim for Relief, a declaratory judgment from this Court determining that the Chapter 13 bankruptcy did not discharge the Defendants' personal liability to Plaintiff under the Note and (b) under its Second Claim for Relief, the revocation of discharge pursuant to 11 U.S.C. § 1328(e). Defendants filed their Answer to the Complaint on December 13, 1999

On June 13, 2000, Plaintiff's filed the present Motion for Summary Judgment. The Motion for Summary Judgment only addresses the First Claim for Relief. Defendants filed a late Response to the Motion for Summary Judgment on July 20, 2000. On July 25, 2000, this Court heard arguments by the Plaintiff and Defendants in regard to the pending Motion for Summary Judgment.

## IV. *DISCUSSION*

### A. *Standard For Summary Judgment*

Summary judgment is to be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr.P. 7056 which applies Fed. R.Civ.P. 56. A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatories and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *Thalos v. Dillon Companies, Inc.*, 86 F.Supp.2d 1079, 1082 (D.Colo.2000). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party(ies) may not rest merely on the allegations contained in the answers, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Thalos*, 86 F.Supp.2d at 1082. This Court will review the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party—here the Defendants. *Koch v. Koch Industries*, 203 F.3d 1202, 1212 (10th Cir. 2000) *petition for cert. filed*, 68 U.S.L.W. 3023 (U.S. July 3, 2000) (No. 00–28).

As to the First Claim for Relief, it appears that the parties agree to the facts, but differ on the interpretation of the law. As discussed below, this Court believes that Plaintiff is entitled to judgment as a matter of law under its First Claim for Relief. The Motion for Summary Judgment does not address or provide supportive evidence and affidavits related to the facts giving rise to Plaintiff's Second Claim for Relief. The information which is not

before the Court, but necessary for a determination under 11 U.S.C. § 1328(e) includes, but is not necessarily limited to: (1) the intent of the Defendants, (2) evidence of fraud, and (3) affidavits or supporting documents relevant to attorneys fees and costs requested. Consequently, as to the Plaintiff's Second Claim for Relief, there remain genuine issues of material fact and this Court cannot conclude that the Plaintiff is entitled to judgment as a matter of law. Therefore, to the extent that the Plaintiff seeks a determination of its Second Claim for Relief, this request shall be denied without prejudice.

B. *Can a Debtor Modify the Rights of a Creditor Holding a Claim Which is Secured by Debtor's Principal Residence and Other Collateral?*

An initial issue which underpins this case is whether these Defendants could have modified the rights of Plaintiff as part of their Chapter 13 Plan. A Chapter 13 plan may:

> modify the rights of holders of secured claims, other than a claim secured *only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims . . .

11 U.S.C. § 1322(b)(2) (emphasis added).

Here, the Property was both the Defendants' residence and the location of their business, Jamar Systems, Inc. Based upon the pleadings filed herein and the statements to the Court by counsel, it appears that it is uncontested that this debt was not "*secured only by a security interest in real property that is the debtor's principal residence.*" First, the Note held by Plaintiff evidences a business loan to Jamar Systems, Inc. and the Defendants, jointly and severally. Second, the Property was,

in fact, the location of Defendants' business, Jamar Systems, Inc. Third, the Note is secured not *only* by the real Property. The Note is also secured by other personal property of the Defendants and the personal property of Jamar Systems, Inc. As a consequence, the claim of Plaintiff most likely could have been modified by the Defendants' Plan. *In re Hammond,* 27 F.3d 52, 58 (3d Cir.1994) (a mortgage which creates a security interest in a debtor's personal property in addition to a lien on the mortgagors principal residence takes the mortgage beyond the protection of the anti-modification clause of 11 U.S.C. § 1322(b)(2) and permits bifurcation of the mortgage into secured and unsecured components under 11 U.S.C. § 506(a)); *but see, In re French,* 174 B.R. 1, 7 (Bankr. D.Mass.1994) (the Court held that the existence of collateral which is nothing more than an "enhancement" does not result in a forfeiture of the anti-modification clause of 11 U.S.C. § 1322(b)(2)); *but see, also, PNC Mortgage Company v. Dicks,* 199 B.R. 674, 681 (N.D.Ind.1996) (the Court concurred with *French* and concluded that the anti-modification provision is not forfeited if the property is of little or no independent value).

■ The bottom line is that the Defendants probably could have modified Community Bank's claim. The Defendants did not seek to do so during the course of their Chapter 13 bankruptcy case. Thus, the Defendants chose *not* to modify the rights of Community Bank. As a result, the provisions of the confirmed Plan bound the Debtors to this decision. 11 U.S.C. § 1327(a). Accordingly, Defendants, consistent with 11 U.S.C. § 1322(b)(2), left unaffected the bundle of rights of Community Bank had under its Note—this bundle of rights included the right to pursue a deficiency.[2]

---

**2.** Colo.Rev.Stat. 38–38–106(1) requires that the owner of a note and deed of trust "shall bid at least such owner's good faith estimate of the fair market value of the property being sold . . ." There have been no allegations made

by Defendants that the deficiency was not based on Plaintiff's "good faith estimate of the fair market value of the property." Thus, the Court assumes the deficiency bid was pursuant to and in accordance with applicable law

### C. Is Plaintiff's Debt Discharged Under 11 U.S.C. § 1328(a)?

Chapter 13 affords a debtor a "discharge of *all* debts *provided for by the plan.*" 11 U.S.C. § 1328(a) (emphasis added). "As long as the plan contains some provision describing the treatment of that debt, and no exception to the chapter 13 discharge applies, the debt is discharged." 8 Lawrence P. King, Collier on Bankruptcy ¶ 1328.02[3][a] (15th ed.2000). The question here is—did the Plan provide for the debt? "The most natural reading of the phrase to 'provid[e] for by the plan' is to 'make provision for' or 'stipulate to' something in a plan." *Rake v. Wade*, 508 U.S. 464, 473, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993). Here, the Defendants' Plan split Community Bank's *secured* claim into two separate categories: (1) the amount to cure—paid through the Plan and (2) the regular monthly payments—paid outside of the Plan. The amount to cure was "provided for" under the Plan. *Id.* The regular monthly payments—i.e., the maintenance of the underlying Note and Deed of Trust during the pendency of the bankruptcy—were not "provided for" under the Plan.[3]

The Defendants simply chose to make ongoing payments to this secured creditor *outside* of the Plan. The ramification of this decision was that the Defendants did *not* (and could *not*) invoke the "cram-down" provisions of 11 U.S.C. § 1325(a)(5). Instead, Defendants, outside of the Chapter 13 Plan, would be required to either pay the debt according to the original contract or work out some arrangement with Community Bank to pay the debt at some reduced amount or under different repayment terms. *In re Case*, 11 B.R. 843, 845 (Bkrtcy.D.Utah 1981). Another byproduct of the Defendants' choice to make regular ongoing payments to Community Bank outside of the Plan was that the debt would not be discharged under 11 U.S.C. § 1328(a). *Id.*

Furthermore, based on the Defendants' schedules and as acknowledged by counsel for the Defendants at the hearing in regard to this matter, Defendants could *not* have modified or otherwise "crammed-down" the debt of Community Bank because the Property was oversecured. 11 U.S.C. § 1325(a)(5). It was not until after the case was closed and after foreclosure that any deficiency was realized. Defendants argue that because they could not "cram-down" this debt during their bankruptcy—in light of the apparent equity in the Property—they should, retroactively, be permitted to simply discharge the debt. In effect, the Defendants propose to "cram-down" the debt post-bankruptcy.

Despite counsel's invitation to do so, this Court cannot undertake this extraordinary and unprecedented step. If this Court were to determine that an oversecured creditor can be discharged *after* a bankruptcy case if the value of the collateral decreases, thus resulting in a deficiency and personal liability to a debtor, it would require all secured creditors to object to confirmation prospectively to enable them to preserve rights which may or may not

---

and was a good faith deficiency bid pursuant to Colo.Rev.Stat. § 38-38-106(1).

**3.** The present case is distinguishable from *In re Gregory*, wherein the Ninth Circuit Court of Appeals held that a plan which proposed zero payment to unsecured creditors "provided for" and discharged the debt under 11 U.S.C. § 1328(a). 705 F.2d 1118, 1121 (9th Cir. 1983). First, in this case, Community Bank was an *oversecured* creditor. It was not, at the time of the filing of the Plan, an *unsecured* creditor. Second, this Plan did not acknowledge an unsecured claim. The Ninth Circuit, in *Gregory*, recognized that "there is a significant difference between a plan which does not acknowledge an unsecured claim and a plan which proposes to pay nothing on a claim." *Id.* If an unsecured claim is not acknowledged, the creditor has no ability to object to confirmation of the debtor's plan. *Id.* Thus, Community Bank, an *oversecured* creditor—according to the Defendants' own schedules—was not "provided for" under the Plan as any unsecured claim was never acknowledged by the Defendants during the course of their bankruptcy.

exist down the road. In addition, post-confirmation, post-case closing "cram-downs" as suggested by counsel would not only violate a creditor's due process rights and not comport with the spirit and intent of the Code, it would also create a perplexing precedent ripe for future problems and mischief. *See In re Crites,* 201 B.R. 277, 281 (Bankr.D.Or.1996) (the language "provided for," encompasses the due process requirement of the 5th Amendment to the constitution). Finally, such a ruling would greatly upset the finality of plan confirmation, discharge and case closings.

### D. *Res Judicata*

 Defendants are also precluded from retroactively modifying Plaintiff's claim by the doctrine of *res judicata.* "Modification of a plan to alter the treatment accorded to a particular claim under the plan based on an issue that could have been litigated prior to confirmation is barred by the doctrine of *res judicata.*" *In re Algee,* 142 B.R. 576, 577–78 (Bkrtcy. D.Colo.1992). Here, Defendants could have, among other things: (1) initiated a proceeding to modify the claim under the Note and Deed of Trust; (2) sought a valuation of the collateral securing the Note; and/or (3) provided in the Plan that any remaining unsecured portion of Community Bank's claim would be discharged. Defendants did none of these things.

### E. *Revocation of Discharge Pursuant to 11 U.S.C. § 1328(e)*

Plaintiff also asserts in its Second Claim for Relief of the Complaint that the Defendants' discharge should be revoked pursuant to 11 U.S.C. § 1328(e). The basis of such request is the undisputed fact that the Defendants received and obtained possession of certain settlement proceeds related to the pursuit of a claim for breach of warranty and/or negligence against the builder of the home on the Property. It is undisputed that much of the proceeds from this settlement went to Plan payments under their confirmed Chapter 13 Plan and,

as a result, the Defendants were given an early discharge. However, the pending Motion for Summary Judgment contains little, if any, information in regard to the Second Claim for Relief. Thus, the Court will not enter judgment at this time as to the Plaintiff's Second Claim for Relief. The Court will conduct a trial in regard to the Second Claim for Relief at the time already scheduled for trial of this entire matter at **9:00 a.m. on Friday, August 25, 2000,** and shall be held in Courtroom E. United States Bankruptcy Court for the District of Colorado, U.S. Custom House, 721 19th Street, Denver, Colorado 80202–2508.

## V. *CONCLUSION*

The Court concludes as follows:

1. These Defendants could have modified the rights of Community Bank, which held a claim secured by Defendants' principal residence and other collateral, but they did not do so during the course of their bankruptcy.

2. The Defendants' Plan split Community Bank's secured claim into two separate categories: (1) the amount to cure—paid through the Plan and (2) the regular monthly payments—paid outside of the plan. The amount to cure was "provided for" under the Plan. *Id.* The regular monthly payments were not "provided for" under the Plan. The regular monthly payments and the underlying obligations under the Note and Deed of Trust were not discharged by the Plan.

3. The doctrine of *res judicata* precludes Defendants from retroactively declaring a debt discharged after confirmation, discharge and case closing, where (a) the Plan does not provide expressly for the discharge of the debt, (b) the Defendants made no attempt during the pendency of the bankruptcy case to obtain a valuation of the property, and (c) the debt was scheduled as oversecured but where, after confirmation, discharge and case closing, a foreclosure sale results in a deficiency.

**516**

4. The Court will not enter judgment at this time as to the Plaintiff's Second Claim for Relief.

## VI. *ORDER*

IT IS THEREFORE ORDERED THAT the Plaintiff's Motion for Summary Judgment is hereby GRANTED as to Plaintiff's First Claim for Relief. The Defendants' Chapter 13 bankruptcy discharge did not discharge the Defendants' personal obligations to Plaintiff.

IT IS FURTHER ORDERED THAT the Court will conduct a trial in regard to the Second Claim for Relief at the time already scheduled for trial of this entire matter at **9:00 a.m. on Friday, August 25, 2000,** and shall be held in Courtroom E. United States Bankruptcy Court for the District of Colorado, U.S. Custom House, 721 19th Street, Denver, Colorado 80202–2508.